**NEPA COALITION OF JAPAN, et al., Plaintiffs,**

v.

**Les ASPIN, in his official capacity of Secretary of Defense of the United States,[1] et al., Defendants.**

Civ. A. No. 91–1522.

United States District Court, District of Columbia.

Nov. 30, 1993.

Edward L. Rogers, Washington, DC, for plaintiffs.

Charles W. Findlay, III, Beverly S. Nash, Carol Petsonk, U.S. Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, Senior District Judge.

On November 4, 1993, this Court conducted a hearing to consider whether the Nation-

---

1. Mr. Aspin, the current Secretary of Defense, has been substituted for his predecessor, Mr. Cheney, pursuant to Fed.R.Civ.P. 25(d).

al Environmental Policy Act ("NEPA")[2] requires that the Department of Defense ("DOD") prepare Environmental Impact Studies ("EIS") for certain U.S. military installations in Japan. Based on the arguments and authorities presented by the parties in their briefs and during the hearing, the Court found that NEPA is not applicable in the situation before us. This Order memorializes the Court's bench ruling granting summary judgment for defendants.

## I. *Analysis*

 There is a presumption against the extraterritorial application of statutes ("the presumption"). *See Foley Bros., Inc. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1942). A court is to assume that Congress legislates with an awareness of this presumption. *E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991). Any doubts concerning the extraterritorial application of statutes must be resolved restrictively. *Smith v. United States,* — U.S. —, —, 113 S.Ct. 1178, 1182, 122 L.Ed.2d 548 (1993).

Plaintiffs contend that under the controlling precedent in this Circuit the Court should apply NEPA overseas. *See Environmental Defense Fund, Inc. v. Massey,* 986 F.2d 528, 531 (D.C.Cir.1993) (applying NEPA to a U.S. research station in Antarctica). *Massey,* however, involved the unique status of Antarctica, which the Court of Appeals

noted "is not a foreign country, but rather a continent that is most frequently analogized to outer space."[3] *Id.* at 533. The *Massey* court expressly limited its ruling by refusing to decide whether NEPA might apply to actions involving an internationally recognized sovereign power. *Id.* at 537.

The Court determines that the legal status of United States bases in Japan is not analogous to the status of American research stations in Antarctica. DOD operations in Japan are governed by complex and long standing treaty arrangements. U.S. bases there, several of which are also utilized by the Japanese Self Defense Forces, are operated pursuant to the Treaty of Mutual Cooperation and Security of 1960, 11 U.S.T. 1633–35, and the Status of Forces Agreement ("SOFA"), 3 U.S.T. 3342–62. Article XXV of the SOFA establishes the Joint Japanese/American Committee ("Joint Committee") with 15 constituent standing subcommittees. Among the subcommittees is the Subcommittee on Environment and Noise Abatement which meets biweekly to examine the types of concerns expressed by plaintiffs.[4] By requiring the DOD to prepare EISs, the Court would risk intruding upon a long standing treaty relationship.[5]

Plaintiffs are unable to show that Congress intended NEPA to apply in situations where there is a substantial likelihood that treaty relations will be affected. *See Natural Re-*

---

2. 42 U.S.C. §§ 4321 *et seq.,* particularly § 4332.

3. Plaintiffs also depend on the portion of the *Massey* decision indicating that NEPA, as a procedural statute, would not be subject to the presumption if there is no conflicts of law problem. As the Court states *infra,* there is the very real possibility of conflicting laws if the DOD is required to prepare EISs around U.S. bases. In addition, two post-*Massey* Supreme Court cases hold that the choice of law dilemma is not the only justification for the presumption. *See Smith,* — U.S. at —, n. 5, 113 S.Ct. at 1183, n. 5 ("presumption is rooted in a number of considerations not the least of which is the common-sense notion that Congress generally legislates with domestic concerns in mind"); *see also Sale v. Haitian Centers Council, Inc.,* — U.S. —, —, 113 S.Ct. 2549, 2560, 125 L.Ed.2d 128 (1993) (the presumption can apply to the procedural aspects of a statute even if there is no conflict of law dilemma).

4. Therefore, even if Japanese courts determine that they lack jurisdiction over the bases, the Joint Committee provides plaintiffs with a mechanism for relief. The U.S. bases do not exist in a lawless vacuum, but instead operate under the agreements reached between the two sovereigns.

5. Such risks suggest the presence of a nonjusticiable political question. At a minimum they raise prudential concerns over the competence of the judiciary to enter an area with no direct effects in the United States. The preparation of EISs would necessarily require the DOD to collect environmental data from the surrounding residential and industrial complexes, thereby intruding on Japanese sovereignty. In addition, the DOD would have to access the impact of Japanese military activities at these bases. There is no evidence that Congress intended NEPA to encompass the activities of a foreign sovereign within its own territory.

sources *Defense v. Nuclear Regulatory Commission,* 647 F.2d 1345, 1366–67 (D.C.Cir. 1981) (noting a lack of evidence that Congress intended NEPA to apply abroad, and finding that Congress intended cooperation, not unilateral action by the United States in its relations overseas). Therefore, we have no difficulty in determining that the presumption against extraterritoriality applies with particular force to the case at bar.

For completeness, the Court notes that even if NEPA did apply in this case, as an initial proposition, no EISs would be required because U.S. foreign policy interests outweigh the benefits from preparing an EIS. *Massey,* 986 F.2d at 535 (considering whether NEPA, if enforced, would threaten foreign policy); *see also Committee for Nuclear Responsibility v. Seaborg,* 463 F.2d 796, 798 (D.C.Cir.1971) (NEPA requirements must give way when government made "assertions of harm to national security and foreign policy"); *and Greenpeace v. Stone,* 748 F.Supp. 749, 760 (D.Haw.1990). Plausible assertions have been made that EIS preparation would impact upon the foreign policy of the United States. Therefore, NEPA requirements would necessarily yield.

## II. *Conclusion*

The Court notes the limits of its holding. We determine that the presumption against extraterritoriality not only is applicable, but particularly applies in this case because there are clear foreign policy and treaty concerns involving a security relationship between the United States and a sovereign power. We do not address whether NEPA applies in other factual contexts.

An order in accordance with this opinion has been filed this date.

## ORDER

Upon consideration of plaintiffs' motion for summary judgment, defendants' motion for summary judgment, and the opposition and replies thereto, and the entire record herein, and for the reasons stated in an accompanying memorandum opinion entered this day, it is by the Court this 30th day of November, 1993, hereby

ORDERED that plaintiffs' motion for partial summary judgment is denied; and it is

ORDERED that defendants' motion for summary judgment is granted; and it is

FURTHER ORDERED that the case is dismissed with prejudice.